Waldo, J.
There can be no doubt that a person should be excluded from giving evidence who is insane at the time he is offered as a witness. The reason of this rule is, that the mind of such a person is not in a fit condition to be properly impressed with the nature and obligation of an oath. But a lunatic or monomaniac may be sworn, and may testifyj if at the time he can apprehend and appreciate the religious sanction of the obligation he is required to take. The question of competency is for the court, and must be settled before the witness is sworn. *147 The state of a person’s mind in this respect may be ascertained by an examination of witnesses acquainted with him, or by a personal examination of him by the court, or by counsel in the presence and under the direction of the court, or by all these modes at the discretion of the court. When the court is satisfied that the person has capacity sufficient to comprehend the nature and obligation of an oath, he may be sworn as a witness. In the case under consideration, the witness, Josiah Terrill, was admitted to testify without objection, no question having been made as to his sanity at the time he was sworn. But the defendants insist that he was insane at the time the facts occurred about which he testified, and that it was competent for them to have shown it at the time to detract from the force of his testimony. The plaintiff claims that insanity is no objection to either the competency or the credibility of a witness, provided he is sane at the time he is *sworn ; and he [ *180 ] relies upon the authority of the case of Evans v. Heltick, 7 Wheaton, 453, to sustain his position. It does not appear from an examination of this case that any question regarding the competency or credibility of witnesses was made by counsel. The only allusion to this subject is in the opinion of the court, given by Justice Story, and seems to be an obiter opinion upon a supposed state of facts rather than a deliberate adjudication of a question upon argument. He says, “ the plaintiff then proposed to ask a question of a witness, whether Daniel Stouffer was subject to fits of derangement, and whether the witness had said so ; but the court overruled the question. It does not appear distinctly in the record that Daniel Stouffer was a witness in the cause, but, if he was so, the question was properly overruled, because a person’s being subject to fits of derangement is no objection either to his competency or credibility, if he is sane at the time of giving his testimony.” If this had been a material question in that case, it could have little or no influence upon the question now under consideration, for it will be perceived that the two' cases are in no respect parallel. The question proposed to the witness in that case was, whether Daniel Stouffer was subject to fits of derangement, and was not, as in the case under consideration, whether he was insane at the time of the transaction about which he had testified. Judge Story held that a witness was not rendered incompetent, nor was his credibility impaired, by reason of his being subject to fits of derangement, if at the time of giving his testimony he was sane, and this was all he was required to say upon the facts supposed. He was not required to intimate, nor does he intimate, what his opinion was upon the supposition that the witness *148 was really insane at the time the occurrence happened. The mere fact that a person has been deranged, or is subject to aberrations of mind, is a-very different matter from his being a maniac when events have happened which he is called upon to narrate. In one case a sane mind may be called upon to detail impressions made upon it when in a sound and healthy state, and in the other it is required to give the impressions [ *181 ] received when it *was affected ■ with delusions that may have tinged everything with a false coloring. We may therefore concede the point, that fits of derangement will not impair the credit of a witness otherwise unaffected, and still the question, as to what is the effect of insanity at the very instant of the transaction, upon the story of the narrator, will remain unanswered. It is indeed impossible to analyze the laws by which an unsound intellect is controlled, and to deduce any general rule by which the phenomena of “a mind in ruins” can be tested, and its vagaries understood and explained. The inlets to the understanding may be perfect, so far as any human eye can discern, the moral qualities may all be healthy and active, the conscience may be sensitive and vigilant, and the memory may be able to perform its office faithfully, and yet, under the influence of morbid delusions, reason becomes dethroned, false impressions from surrounding objects are received, and the mind becomes an unsafe depository of facts. The force of all human testimony depends as much upon the ability of the witness to observe the facts correctly as upon his disposition to describe them honestly, and if the mind of the witness is in such a condition that it can not accurately observe passing events, and if erroneous impressions are thereby made upon the tablet of the memory, his story will make but a feeble impression upon the hearer, though it be told with the greatest apparent sincerity.
We are therefore of opinion that the insanity of a witness at the time of the transaction about which he is called to testify, does impair the force of his testimony, and is a matter proper to be considered by the triers to whom his testimony is submitted ; and if this matter is to be considered by the triers, we do not perceive any reason why it should not be treated like any other fact. The question of insanity is one of fact, and must be found upon proper evidence, and in our judgment the character of the evidence can not be materially different in whatever form the question may arise. In the case of Grant v. Thompson, 4 Conn. R., 208, this court held that it was proper “ to go into £ *182 j a history of the supposed lunatic’s mind, *before, at, and after his contract, in order to ascertain his real condition at the moment of entering into the agreement.” The *149 defendants offered evidence, on the trial of this case, similar to this in its character, which was rejected by the court. In this we think the court erred. It is true, it introduced a side issue that might have consumed much time, and might have been embarrassing to the triers, but still we think it might have been necessary for the full development of the truth, and if so, the right of having the evidence heard was one of which the defendants should not have been deprived. We are not required to decide as to the importance or effect of this evidence upon the whole case; these would doubtless have been properly appreciated by the jury, had the evidence been submitted to them, and inasmuch as they were not permitted to consider it, the defendants may have been injured, and are therefore entitled to a new trial.
The view' we have taken of this question is, we think, fully sustained by the court of Queen’s Bench in the case of Regina v. Hill, decided in the year 1851, and reported in the English Law and Equity Reports, vol. 5, p. 547. That court held in that case, that a lunatic, under confinement in a lunatic asylum, was an admissible witness to facts that occurred in his presence while so confined—the judge, upon inquiry, having become satisfied that he was competent in point of understanding, and was aware of the nature and sanction of an oath at the time he testified; that it was for the judge to say whether the witness was competent to testify, and was for the jury to decide, under all the circumstances, upon the weight of his evidence. We are fully satisfied with the doctrine of that case, and think it leads to the same conclusion to which we have come in the case at bar.
The conclusion to which w'e have come upon this question, renders it unnecessary to examine the other point, in regard to the admissibility of the evidence of Maria Holcomb, to show the extent of the plaintiff’s injury and to enhance the damages.
A new trial is advised.
In this opinion the other judges concurred; except Sanford, «L, who did not sit in the case.
New trial advised.