[Worthington & Co. v. Mencer.]

# Worthington & Co. v. Mencer.

*Action by Employe against Employer, for Damages on Account of Personal Injuries.*

1. *Person of unsound mind suing by next friend; objection by defendant to maintenance of suit.*—Where an action for damages on account of personal injuries is prosecuted by a next friend, the complaint alleging that the plaintiff is of unsound mind, and has no guardian appointed in this State (Code, § 2580), any objection by the defendant to the interposition of the next friend should be raised before a trial upon the merits is entered upon. A charge upon the evidence is not a proper mode of raising such an objection.

2. *Same; competency of, to testify.*—It does not necessarily follow that a plaintiff is not competent to testify, because he sues by his next friend, as a person of unsound mind ; the true reason for not admitting the testimony of a person of unsound mind in any case being that his malady involves such a want or impairment of faculty that events are not correctly impressed on his mind, or are not retained in his memory, or that he does not understand his responsibility as a witness. And where the suit is so prosecuted by a next friend, though the complaint admits the plaintiff's mental unsoundness, the question of his competency as a witness is one for the court.

3. *Witness of unsound mind; credibility of his testimony, a question for the jury.*—Where one suing by his next friend, as a person of unsound mind, is found by the court to be a competent witness, it is for the jury to determine the effect of his unsoundness of mind upon the credibility of his testimony ; and, where he is uncorroborated, it is error to refuse a charge requested by the defendant that, if the jury believe from the evidence that the plaintiff is unsound in mind to such an extent that his testimony is unreliable and unworthy of belief, their verdict should be for the defendant.

4. *Person of unsound mind; when chargeable with contributory negligence.*—One whose mind is merely dull, and who is capable of earning his livelihood, there being no apparent necessity of putting him under the protection of a guardian to keep him out of harm's way, is chargeable with the same degree of care for his personal safety as are others of brighter intellect ; but if he is so devoid of intelligence as to be unable to apprehend apparent danger, and to avoid exposure to it, one through whose negligence he is injured, having notice of his peril and of his lack of sufficient intelligence to avoid it, can not escape liability on the ground of his contributory negligence.

5. *Same; burden of proof.*—When it is sought, in behalf of an adult, to avoid the consequences of his own conduct, and to charge another with liability for a result to which such conduct contributed, the burden is upon him to show that he was not responsible for his own acts, and that the person sought to be charged was under the duty of dealing with him as one incompetent to care for himself.

APPEAL from the City Court of Birmingham.
Tried before the Hon. H. A. SHARPE.

[Worthington & Co. v. Mencer.]

This action was brought by Alonzo F. Mencer, suing by his next friend, J. H. Dean, against the appellants, J. W. Worthington, and others, as partners, composing the firm of J. W. Worthington & Co., to recover damages for personal injuries sustained by plaintiff while in defendants' employment. The pleas were the general issue, and contributory negligence.

On the trial, the plaintiff was examined, as a witness in his own behalf. The defendants did not at that time object to his testifying; but, after all the evidence had been introduced and the argument of the case had begun, they moved the court to exclude from the jury all the testimony of the plaintiff, on the ground, that by his complaint he alleged himself to be *non compos mentis*, at the time of bringing the suit and at the time of the trial, and was therefore one whose evidence could not be received, and was legally incompetent to testify. To the overruling of this motion the defendants excepted. They also excepted to the refusal of the court to give each of the following charges in writing requested by them: "(10.) This suit is brought by J. H. Dean, suing as next friend of the plaintiff. The statute, section 2580 of the Code of Alabama, provides that persons of unsound mind shall sue by their guardian, or, in case they have no guardian, by their next friend. The plaintiff, therefore, is a person of unsound mind by the admission of himself, his counsel, and his next friend. And, if you believe from the evidence that he is unsound in mind to such an extent that his testimony is unreliable and unworthy of belief, your verdict should be for the defendants." "(16.) If the jury believe from the evidence that the plaintiff, Alonzo Mencer, is not *non-compos mentis*, their verdict should be for the defendants." "(17.) If the jury believe from the evidence that the plaintiff, Alonzo Mencer, was, at the time of the accident, in July, 1890, so weak minded as not to have been charged by the law with the duty of exercising ordinary prudence for his own safety, and that his mental condition since then has been, and is now, in the same condition; and that his testimony is the only testimony establishing the negligence averred in the complaint, then the court charges you that the verdict of the jury must be for the defendants." "(18.) If the jury believe from the evidence that the plaintiff's intelligence is sufficient to remember and truthfully to state what were the facts and circumstances under which he received the injury on the 10th day of July, 1890, then the plaintiff's suit by his next friend can not be maintained." "(19.) If the jury believe from the evidence that the plain-

[Worthington & Co. v. Mencer.]

tiff is *non-compos mentis*, and that he has been *non-compos mentis* since the injury complained of, and that he was *non-compos mentis* immediately before, and at the time of the injury, their verdict must be for the defendants."

There was judgment for the plaintiff, and the defendants appeal.

WEATHERLY & PERCY, and WEBB & TILLMAN, for appellants. (1.) If the plaintiff, Mencer, was not of unsound mind, then this suit by his next friend can not be maintained.   Section 2580 of the Code only authorizes a suit to be brought for personal injuries by a next friend when the person injured is of unsound mind.   It is only by virtue of the statute that such a suit can be brought by next friend.—1 Chit. on Plead. 469; 2 Saunders on Pleading, 333, note 4, and 335; Bacon's Abridgement, title "Idiots and Lunatics;" *Buchanan v. Rant*, 2 Munroe, 114.   (2.) The motion to exclude the testimony of the plaintiff should have been granted.   The general rule, that it is the province of the court to determine the competency of a witness in cases where the pleadings do not estop the witness from alleging his sanity, does not, we insist, apply in a case where the witness who seeks to testify is the plaintiff, and has by his complaint averred himself to be of unsound mind, by bringing his suit by next friend.   (3.) But, conceding that the court did not err in refusing to exclude the testimony of the plaintiff, yet, the charge of negligence of defendants, being supported only by the testimony of the plaintiff, the court should have given the charges requested by defendants, which asserted the proposition that if the plaintiff was unsound in mind to such an extent as to render his testimony unreliable and unworthy of belief, the jury should find for the defendants.—*District of Columbia v. Armes*, 107 U. S. 521; *Hartford v. Palmer*, 16 Johnson, 143; *Campbell v. State*, 23 Ala. 44; 11 Am. & Eng. Encyc. of Law, 144.

BOWMAN & HARSH, *contra*, cited *Allen v. State*, 60 Ala. 19; *Wade v. State*, 50 Ala. 164; *Kelly v. State*, 75 Ala. 21; *Pratt C. & I. Co. v. Brawley*, 3 Sou. Rep. 555; *White v. Craft*, 9 Sou. Rep. 420.

WALKER, J.—When the appellee received the injury which is the occasion of this suit he was employed as a track-hand at the mines of the appellants.   The entries from which the ore was mined were on the side of a mountain.   An inclined railroad was used in carrying the ore from the entries down the mountain side.   There were two parallel

tracks. The dumps or cages on which the ore was carried ran on one of them. A dummy or weight ran on the other track. The cage and the dummy were connected by a wire rope which passed over a pulley or wheel situated above the tracks on the mountain side. When the cage was loaded it was heavier than the dummy, and its weight carried it to the bottom. When the cage was unloaded, it was pulled up to the mines by the heavier dummy running down the other track. As the cage went down, the dummy was pulled up; and as the cage ascended, the dummy at the other end of the rope descended. There were brakes on the cage, and also at the pulley or wheel. The wire rope which connected the cage and the dummy ran on top of the ground, over rollers which were fastened to the cross-ties, so that a person on either track could tell by the presence or absence of the rope whether the vehicle which ran on that track was then below or above. The testimony of the plaintiff himself tended to show that the boss of the mine ordered him to go from one of the entries where he was working, to bring some spikes, which he says were on the cage track lower down, telling him in substance that the cage was not above, but was at the bottom of the incline; that he went down the cage track, and while stooping down on the track picking up the spikes, the cage was run down the track from above, and struck him. The evidence for the defendants tended to show that the plaintiff was struck while attempting to walk from one side of the track to the other, in front of the descending cage, which was in full view. The plaintiff's version of the occurrence was not supported by the testimony of any other witness.

The suit is prosecuted by a next friend in behalf of the plaintiff, the complaint alleging that the plaintiff himself is a person of unsound mind, and that he has no guardian appointed in this State.—Code, § 2580. So long as the suit is prosecuted in this mode, the plaintiff can not be heard to deny that he is of unsound mind, as alleged in his complaint. He stands before the court in the attitude of admitting his mental incompetency. It does not, however, follow from the fact that a person is incapable of managing his own affairs, or of having charge of litigation in which his interests are concerned, that he is incompetent to testify as a witness. There are many grades and phases of mental unsoundness. One's infirmity may be such as to render it expedient to place him under guardianship, and even to subject him to personal restraints, and yet he may be fully competent to understand the nature of an

[Worthington & Co. v. Mencer.]

oath, to observe facts correctly, and to relate them intelligently and truly. A sweeping rule of disqualification which would exclude such a person as a witness would be arbitrary and unsupported by sound reason. The true reason for not admitting the testimony of a person *non compos mentis* in any case is because his malady involves such a want or impairment of faculty that events are not correctly impressed on his mind, or are not retained in his memory, or that he does not understand his responsibility as a witness. When the reason for the exclusion of the witness does not exist, he should be permitted to testify. The following quotations express what we regard as correct views on this subject: "It will be seen then, that a witness is not excluded by this rule, merely because he is a lunatic. That is not enough *per se* to exclude him; but he must at the time of his examination be so under the influence of his malady as to be deprived of that 'share of understanding' which is necessary to enable him to retain in memory the events of which he has been witness, and give him a knowledge of right and wrong. If at the time of his examination he has this share of understanding, he is *competent*. That is the test of competency, and of such competency the court is the judge; whilst the weight of the testimony—the credit to be attached to it—is left to the jury.—*Coleman's case*, 25 Grattan, 875. "The general rule, therefore, is that a lunatic or a person affected with insanity, is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself, and any competent witnesses who can speak to the nature and extent of his insanity."—*District of Columbia v. Arms*, 107 U. S. 521. Other authorities fully sustain the propositions, that the question of the competency of a witness because of mental infirmity is one for the court, and that it is for the jury to determine the effect of his unsoundness of mind upon the credibility of his testimony. *Holcomb v. Holcomb*, 28 Conn. 177; *Kendall v. May*, 10 Allen, 59; *Hartford v. Palmer*, 10 Johnson, 143; *Cannady v. Lynch*, 27 Minn. 435; Wharton on Evidence, (2d Ed.) §§ 402, 409; 11 Am. & Eng. Encyc. of Law, 144.

In the present case, it is not made to appear that the plaintiff was so deficient as to require his exclusion as a witness under the rules above stated. It can not, therefore, be affirmed that the court erred in permitting him to testify.

[Worthington & Co. v. Mencer.]

But he stood before the jury confessedly a person of unsound mind. It was for them to determine, from his appearance and manner, and from the other evidence on the subject, whether he was so mentally incapable as to render his testimony unworthy of acceptance. As his testimony furnished the only proof of negligence on the part of defendants, charge 10 requested by the defendants should have been given.

Any objection by the defendants to the interposition of the next friend for the plaintiff should have been raised before the trial upon the merits it was entered upon. A charge upon the evidence is not a proper mode of raising such an objection.

On the question of the plaintiff's contributory negligence as affected by his mental condition, it is sufficient, for the purposes of another trial, to state rules which should guide in the consideration of this subject. The plaintiff is to be held to the exercise of the degree of care of which he was capable. If he was merely a person of dull mind, who could labor for his own livelihood, and there was no apparent necessity of putting him under the protection of a guardian to keep him out of harm's way, he is chargeable with the same degree of care for his personal safety as one of brighter intellect, as any attempt to frame and adapt varying rules of responsibility to varying degrees of intelligence would necessarily involve confusion and uncertainty in the law. If, on the other hand, he was so absolutely devoid of intelligence as to be unable to apprehend apparent danger, and to avoid exposure to it, he can not be said to have been guilty of negligence, because he was incapable of exercising care. When the mere negligence of another causes or contributes to the injury of a person who is mentally incompetent to such a degree, if the conduct of the injured person would have avoided his claim to relief if he had been capable of exercising care in his own behalf, the person inflicting the injury is not to be held to a liability which would not have been incurred under the same circumstances in favor of a person of ordinary capacity, unless he had notice of the injured person's mental deficiency, and of his consequent helplessness and peril in the circumstances in which he was placed. The duty of observing special precautions for the safety of another, because the latter, by reason of mental imbecility, can not be influenced by the dictates of ordinary prudence, is not cast upon one who is not charged with notice of the other's peril and of his lack of sufficient intelligence to avoid it. When it is sought, in behalf of an

adult, to avoid the consequences of his own conduct, and to charge another with liability for a result to which such conduct contributed, the burden is upon him to show that he was not responsible for his own acts, and that the person sought to be charged was under the duty of dealing with him as one incompetent to care for himself. The mental deficiency of an adult which would exempt him from accountability for his own conduct proximately contributing to his personal injury, would also render him an incompetent witness of the occurrence in which the injury was received.