[No. 10847.   Department One.   June 13, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES PRYOR, *Appellant*.[1]

ABORTION—ELEMENTS OF OFFENSE—STATUTES—CONSTRUCTION. In a prosecution for abortion under Rem. & Bal. Code, § 2448, defining the offense as the use of any instrument or other means with intent to produce a miscarriage, when the same was not necessary to preserve life, it is immaterial whether the instruments used and inserted were the right kind, or how far they penetrated, or whether they actually caused an abortion or not.

WITNESSES — CREDIBILITY — IMPEACHMENT. In a prosecution for abortion, in which the prosecutrix testified that the accused told her that he inserted instruments for the purpose of relieving her of the child, medical testimony that she was at the time suffering from hysteria, which caused delusions and hallucinations is admissible as affecting her credibility.

Appeal from a judgment of the superior court for King county, Ronald, J., entered July 3, 1912, upon a trial and conviction of abortion.   Reversed.

*A. G. McBride* and *J. E. McGrew*, for appellant.

*John F. Murphy* and *H. B. Butler*, for respondent.

GOSE, J.—The defendant was convicted of the crime of abortion, and has appealed from the judgment entered upon the verdict of the jury.   The statute, Rem. & Bal. Code, § 2448 (P. C. 135 § 391), provides that:

"Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to pre-

[1]Reported in 132 Pac. 874.

serve her life or that of the child whereof she is pregnant, shall  .  .  .  use, or cause to be used, any instrument or other means, shall be guilty of abortion,  .  .  ."

The information charges that the appellant, in King county, on the 6th day of September, 1911, with the intent to produce the miscarriage of Regna Abramson, did (omitting qualifying words) use a speculum and a rubber catheter, which instruments he then and there inserted into her private parts, such miscarriage not being necessary to preserve her life or the life of the child whereof she was then pregnant. This is a second appeal. See *State v. Pryor*, 67 Wash. 216, 121 Pac. 56.

The appellant challenges the sufficiency of the evidence to support the verdict. This point was pressed with much earnestness at the bar, the argument being that the instruments themselves, and the evidence of the medical experts, show that the instruments could not have been inserted in the uterus or cervical canal. The appellant admitted that the girl was pregnant by him, and that he used the instruments upon her, but says that he did so for a lawful purpose, namely, to treat excoriation "in the cervix of the uterus." Touching this question, the court gave the jury the following instruction:

"In this case it has been admitted that Regna Abramson was pregnant and by the defendant, and that the defendant, on or about the date mentioned in the information, inserted in the private parts of said Regna Abramson the speculum and catheter introduced as exhibits in this case. The only question left for you to determine is, Were such instruments, or either one of them, used with intent thereby to produce a miscarriage, the same not being necessary to preserve either the life of Regna Abramson or of the child whereof she was pregnant? If either instrument when inserted was so inserted with that intent, then it makes no difference whether such was the right kind of an instrument, or how far in it penetrated—whether it actually entered the uterus or not, or actually caused an abortion or not—if it, whatever kind it be, and however or wherever it was inserted, was so inserted with

intent thereby to cause an abortion, then you will find the defendant guilty."

The instruction is terse, lucid, and admittedly correct. The girl testified that the appellant told her that he inserted the instruments for the purpose of relieving her of the child. The state's medical witnesses say that the instruments could have been inserted into the uterus. This is denied by the medical experts offered by the appellant. Measured by the law as announced by the court, it is obvious without further comment that this assignment cannot be sustained.

The appellant sought to show by medical testimony that Regna Abramson, who testified for the state, while sane at the time she testified, was, at the time she charges the crime to have been committed, suffering from hysteria, which caused her to have "delusions, hallucinations . . . and illusions." The state's counsel objected on the ground that the testimony was irrelevant and immaterial. The court in sustaining the objection, among other things, said: "The man did insert that instrument or he did not with intent; he did or he did not, that is the whole question." The court was both right and wrong in this utterance; right so far as he stated the fact at issue, and wrong in so far as he reached the conclusion that the testimony was inadmissible. The appellant used the instruments either for the purpose of committing an abortion or for a lawful purpose, namely, that of medically treating the uterus. The evidence offered and rejected was admissible upon the question of the credibility of the girl's testimony. It touched the very heart of the case, namely, was there a criminal intent? It was competent for the same reason that testimony tending to show her intoxication at the time of the occurrence would have been competent. 1 Wharton & Stille, Medical Jurisprudence (4th ed.), § 518; 40 Cyc. 2573; 2 Elliott, Evidence, § 756; Wharton, Criminal Evidence (10th ed.), § 370a; 2 Bishop, New Criminal Procedure (2d ed.), § 1142; *Holcomb v. Holcomb*, 28 Conn.

177 ; *Sarbach v. Jones*, 20 Kan. 497 ; *Dejarnette v. Common-wealth*, 75 Va. 867.

Wharton & Stille, Medical Jurisprudence (4th ed.), § 518, thus states the rule:

"On the other hand, Morel calls attention to the well-substantiated fact that patients of these classes [sufferers from hysteria] sometimes tenaciously cherish delusions and hallucinations that they have been the subject of sexual wrongs from others (*e. g.,* rape, abortion, impregnation) ; and detail the circumstances of such wrongs with a consistency and exactness which, in those unacquainted with the patient's condition, secure belief."

"Delusions and hallucinations constitute that species of mental unsoundness which is marked by persistent and incorrigible beliefs that things which exist only in the imagination of the patient are real." 16 Am. & Eng. Ency. Law (2d ed.), p. 563.

In considering this question in the *Holcomb* case, the court said:

"The inlets to the understanding may be perfect, so far as any human eye can discern, the moral qualities may all be healthy and active, the conscience may be sensitive and vigilant, and the memory may be able to perform its office faithfully, and yet, under the influence of morbid delusions, reason becomes dethroned, false impressions from surrounding objects are received, and the mind becomes an unsafe depository of facts. The force of all human testimony depends as much upon the ability of the witness to observe the facts correctly as upon his disposition to describe them honestly, and if the mind of the witness is in such a condition that it cannot accurately observe passing events, and if erroneous impressions are thereby made upon the tablet of the memory, his story will make but a feeble impression upon the hearer, though it be told with the greatest apparent sincerity. We are therefore of opinion that the insanity of a witness at the time of the transaction about which he is called to testify, does impair the force of his testimony, and is a matter proper to be considered by the triers to whom his testimony is submitted ; and if this matter is to be considered by the triers,

we do not perceive any reason why it should not be treated like any other fact."

In the *Dejarnette* case, it is said:

"In all inquiries relating to insanity, every reasonable latitude should be allowed in the examination of witnesses, however false or unfounded the court may consider the defense."

The state relies upon the case of *State v. Hayward*, 62 Minn. 474, 65 N. W. 63. In that case the court remarked that the temporary aberrations or delusions sought to be proven were remote in point of time, and were not of the same type or character as the delusions claimed to have existed in the mind of the witness at the time of the occurrence to which the witness testified. In other respects it differs so widely in its facts from this case that a discussion of it would not be profitable.

The judgment is reversed, with directions to grant a new trial.

CROW, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.