[No. 1571-2.   Division Two.   August 6, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH KNAPP, *Appellant.*

*Donald W. Frey* and *Klingberg, Houston, Reitsch, Cross & Frey*, for appellant.

*Henry R. Dunn, Prosecuting Attorney*, and *Kenneth Cowsert, Deputy*, for respondent.

ARMSTRONG, C.J.—Kenneth Knapp appeals from a conviction of second-degree assault with a weapon or thing

likely to produce bodily harm. He argues that any one of five alleged errors committed in the trial court, or their cumulative effect, entitles him to a new trial. His initial contention raises a first impression issue—did the court err by ruling that a witness cannot be impeached by the showing of a prior conviction when he was not represented by counsel at the previous prosecution? We have concluded that to exclude evidence of the prior unconstitutional conviction was proper. Defendant's second contention is that the court erred by limiting his cross-examination of the complaining witness, his brother Clarence. We hold that the attempted cross-examination was remote, and that the court did not abuse its discretion in precluding the inquiry. Third, defendant objects to remarks made by the prosecutor during closing argument. We do not agree that the remarks amounted to misconduct having a prejudicial effect on the jury. Nor do we agree with the defendant's fourth contention, that the court commented on the evidence. Finally, defendant's fifth assignment of error is that a newspaper headline published during trial prejudiced the jury. We hold that error did not occur. Because we find that the trial court did not err in its ruling as to each of the five issues presented by the defendant on appeal, we affirm the conviction.

The record discloses that the defendant, Kenneth Knapp, and his brother, Clarence Knapp, had been involved in a continuing family dispute over a homestead which their father had given to another brother. In the early morning hours of April 1, 1973, following an altercation first at a tavern and later at a grocery store, Clarence received a stab wound in the abdomen. The sufficiency of the evidence supporting Kenneth's conviction of the stabbing is not challenged on appeal. Various family members had testified for each side, with one faction supporting Kenneth's version and another faction corroborating Clarence's testimony. The one neutral witness, a woman living across the street from the grocery store, saw most of the incident, but was

not in a position to see the two men for several seconds, and did not see them come into contact.

The first issue presented on appeal is one which as yet has not been addressed by the appellate courts: Can the complaining witness in a criminal case be impeached by the introduction of a conviction obtained in violation of the sixth amendment to the United States Constitution? The record indicates that this issue was discussed by the trial court and counsel prior to the cross-examination of defendant's brother in relation to one of his prior convictions. Out of the presence of the jury, the trial court determined that in May 1972, Clarence had been convicted of assault and battery, fined $250, and sentenced to 5 days in jail. Both the fine and sentence were suspended. Clarence testified that he did not have an attorney in that case, and there was no showing that he had effectively waived counsel. The trial court ruled that this prior conviction could not be introduced to impeach Clarence because he was not represented by counsel at the time.

In ruling that the assault and battery conviction was inadmissible, the trial court relied upon *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967) and *State v. Paul*, 8 Wn. App. 666, 508 P.2d 1033 (1973). In *Burgett* at page 115, the court held:

> To permit a conviction obtained in violation of *Gideon* v. *Wainwright* [372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963)] to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case.

We note that the rule excluding such convictions from evidence was reaffirmed by the Supreme Court in *United States v. Tucker*, 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972). There the rule was applied in a case where a defendant's prior convictions obtained in violation of *Gideon* were used in sentencing him. Further, in *Loper v. Beto*, 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (1972), the court held that the *Burgett* exclusionary rule applied to the use of such convictions to impeach the defendant. The court

also ruled in *Loper* that *Burgett* was retroactive in its application without regard to whether the convictions were used prior to or after *Gideon.*

In the second case relied upon by the trial court, *State v. Paul, supra,* the court stated the rule in Washington, at page 667, as follows:

> Hence, the rule now is that the use of prior convictions for the purpose of impeachment or enhancement of punishment shall not be allowed unless it shall appear upon the record that the defendant was afforded counsel at the prior hearing or, in fact, made a valid waiver of counsel.

The court in the *Paul* case held that prior felony convictions had been improperly used to enhance punishment, and also found that the convictions had been used to impeach the defendant on cross-examination, but that the cross-examination was not grounds for reversal because the defendant had admitted the convictions on direct. The *Burgett* rule was also applied in *Haislip v. Morris,* 84 Wn.2d 106, 524 P.2d 405 (1974) and *State v. Montague,* 10 Wn. App. 911, 521 P.2d 64 (1974).

The above cases all involved the constitutionality of the use of a prior conviction of a *defendant.* In the instant case, the issue arose when the defendant attempted to impeach a *prosecution witness* by the use of an unconstitutionally obtained conviction. We see no reason for there to be a different rule for a witness than for a defendant in this situation. The use at trial of a prior conviction of either a defendant or a witness is limited to affecting the weight of his testimony. RCW 10.52.030. It is permissible for this purpose under the theory that the jury is entitled to be made aware of the fact of a witness' conviction because one convicted of a crime may be deemed by the jury to be less credible. However, this permission is based upon the assumption that the witness was rightly adjudged to have committed the crime. It can surely be said that as a rule, the fact that an individual was not represented by counsel in a criminal prosecution decreases the reliability of the con-

viction. The Supreme Court made this very point in *United States v. Tucker*, 404 U.S. 447 n.5, where the court stated:

> It is worth pointing out, however, that to make the contrary assumption, *i. e.*, that the prosecutions would have turned out exactly the same even if the respondent had had the assistance of counsel, would be to reject the reasoning upon which the *Gideon* decision was based: . . .

The court went on to quote from *Gideon* to the effect that one who does not have counsel because of his poverty is denied a fair trial, and that counsel is a necessity, not a luxury.

The unreliability of unconstitutionally obtained convictions was pointed out again in *Loper v. Beto, supra* at 483, where the court stated:

> We have said that the principle established in *Gideon* goes to "the very integrity of the fact-finding process" in criminal trials, and that a conviction obtained after a trial in which the defendant was denied the assistance of a lawyer "lacked reliability." *Linkletter* v. *Walker*, 381 U.S. 618, 639 and n.20, [14 L. Ed. 2d 601, 614, 85 S. Ct. 1731].

As indicated in these cases, the unreliability of convictions obtained in violation of Sixth Amendment rights is one of the reasons for the prohibition of their use in subsequent proceedings. It should be obvious that the unreliability of an unconstitutional conviction is exactly the same whether the one unconstitutionally convicted becomes a defendant or a witness in a subsequent case. Thus, the limitation on the use of such prior convictions should be the same for both defendants and witnesses.

■ Moreover, the purpose of the *Burgett* rule is to prevent an erosion of the principles of *Gideon*. *Burgett v. Texas, supra* at 115. That constitutional principle was presumptively violated when Clarence was convicted of the assault and battery charge in May 1972, because he was not represented by counsel, and the record does not show that he had validly waived counsel. Waiver of counsel may not be presumed from a silent record. *Carnley v. Cochran*, 369

U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962); *State v. Alexander*, 10 Wn. App. 942, 521 P.2d 57 (1974). Were we to sanction the use of this conviction for impeachment purposes in this proceeding, we would be perpetuating the error committed in the earlier prosecution and putting the judicial stamp of approval on a violation of constitutional rights. The constitutional error is no less grave or the subsequent proceedings any less tainted because it is a witness and not a defendant that is being impeached with the prior unconstitutional conviction.

One further problem, not dealt with by the parties on appeal, is whether the *Burgett* rule applies to prior misdemeanor convictions. We have little trouble resolving this issue in light of *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). There the Supreme Court held that the Sixth Amendment guarantees the right to counsel can be imposed before imprisonment whether the offense be categorized as petty, misdemeanor or felony. *Argersinger* was made retroactive in *Berry v. Cincinnati*, 414 U.S. 29, 38 L. Ed. 2d 187, 94 S. Ct. 193 (1973). Clearly the same considerations apply whether the prior conviction obtained in violation of Sixth Amendment rights was a felony or a misdemeanor.

Turning now to the second issue, the defendant contends that in two respects the court improperly limited cross-examination of his brother, the complaining witness. One line of questioning was designed to show attempts by his brother to convince him to commit two crimes. The second line of questioning would have been an attempt to show specific acts ostensibly indicating that Clarence was mentally unstable, and, therefore, incapable of accurately recalling and relating events.

It is true that the right to cross-examination in a criminal case is fundamental and zealously guarded by our courts. *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963). For example, this court has previously held that great latitude must be allowed in cross-examining an essential prosecution witness to show motive for his testimony.

*State v. Tate*, 2 Wn. App. 241, 247, 469 P.2d 999 (1970). It has even been said that cross-examination of a witness to elicit facts which tend to show bias, prejudice or interest is a matter of right. *State v. Robbins*, 35 Wn.2d 389, 396, 213 P.2d 310 (1950). This is not to say, however, that the scope of such cross-examination is not within the discretion of the trial court. *State v. Wills*, 3 Wn. App. 643, 476 P.2d 711 (1970); *State v. Robbins, supra.* It is clear that the trial court may, in its discretion, reject cross-examination where the circumstances only remotely tend to show bias or prejudice of the witness, where the evidence is vague, or where the evidence is merely argumentative and speculative. *State v. Jones*, 67 Wn.2d 506, 512, 408 P.2d 247 (1965); *Dods v. Harrison*, 51 Wn.2d 446, 319 P.2d 558 (1957).

The offer of proof as to the first line of cross-examination excluded by the trial court indicated that the defense was prepared to show that on at least two occasions Clarence had attempted to talk Kenneth into committing crimes with him. Specifically, he once attempted to persuade Kenneth to burn down the homestead which had been the subject of the continuing family dispute. On another occasion, he came to Kenneth's house with some rope and a knife and proposed that the two of them steal and butcher some animals. In encouraging him to accept the idea, Clarence told Kenneth that if he was arrested, or there were any problems, he would make sure that he had a lawyer.

The purpose of this cross-examination, as expressed by defense counsel, was to support an inquiry, which was permitted by the trial court, concerning statements by Clarence that he wanted to put his brother Kenneth in jail. The trial court ruled that the attempts to persuade Kenneth to commit these crimes were too remote to show bias because it was not shown that Clarence was going to lay a trap for Kenneth, such as contacting law enforcement officers once Kenneth agreed to commit the crimes. We believe that it was well within the discretion of the trial court to reject this cross-examination because, as the court stated, the evi-

dence was too remote, and was also too vague, argumentative and speculative. *State v. Jones, supra.*

There was also an attempt at trial to impeach Clarence by asking him if he had "been suffering from any mental or emotional disturbance in the past year." Clarence was further asked whether he had once leaped from a moving vehicle, which he answered "No," before an objection was made and sustained. Although the requisite offer of proof was never made, defendant asserts in his brief that he could have shown at trial that Clarence was unstable when drinking, was severely disturbed at his father's death, and would occasionally speak to his father's grave. According to the defendant, this line of questioning would have been an effort to demonstrate that Clarence "was not a competent witness."

Generally, when cross-examination to show an impaired ability to recollect is permitted, it falls into one of three categories: inquiry as to specific details surrounding the subject matter of the case; inquiry regarding unusual behavior or an abnormal condition of the witness at the time the subject matter of the case occurred; or inquiry as to previous treatment for or adjudication of insanity, emotional disturbance, senility, or mental deficiency. 44 A.L.R.3d 1203 (1972); *see State v. Pryor,* 74 Wash. 121, 132 P. 874 (1913) (evidence of witness' mental delusions at time criminal act allegedly occurred was admissible).

Clarence's alleged conduct does not fall into any of these categories. There was no showing that he had ever been treated for a mental problem, and the alleged irregular behavior was manifested at a point in time remote from the day of his stabbing. Moreover, no evidence was offered to show that such behavior reflected an unstable mind or an impaired ability to recall events. The Supreme Court of Washington addressed itself to a similar problem in *State v. Renneberg,* 83 Wn.2d 735, 522 P.2d 835 (1974). There the court held that evidence of the defendant's drug addiction was not admissible for the purpose of undermining credibility in the absence of medical proof that drug addiction is

related to veracity. The court noted that, as in the case at bar, there was no contention the disabling condition existed at the time of the event to which the witness was testifying, or at the time of trial. *See also State v. Smythe*, 148 Wash. 65, 268 P. 133 (1928) (absent specific proof that epilepsy affects the ability to recall facts, a witness may not be cross-examined as to this condition).

We hold that the trial court did not err by restricting the cross-examination of the complaining witness.

The third issue presented is whether remarks made by the deputy prosecuting attorney, who did not argue the case in this court, constituted misconduct of counsel. The challenged remarks are found in his closing argument as he was discussing credibility. He suggested the conflict in the testimony indicated some witness or witnesses had probably not been telling the truth and that they, the jury, would have to decide whom to believe. He noted that the judge had instructed them on credibility and had told them some of the factors to consider in deciding whom to believe, one of which was appearance and demeanor. The prosecutor went on to direct the jury's attention to the fact that Kenneth was "all smiles" on the witness stand and that to Kenneth the "case is a joke." He then stated:

> Here is a man who spent five-and-a-half out of the last eleven years in the state penitentiary. Obviously if he is convicted, he's going back, and it's a joke.
>
> By golly, I can tell you one thing. If I was unjustly accused of a crime, I would be a very concerned person. You would not see a smile on my face, but then again, if I did it anyhow and I had nothing to lose and this is my moment of glory, this is my stage . . .

At this point an objection was made. The judge ruled that the attorneys could argue the case in their own manner, and the prosecuting attorney continued on, mentioning briefly that the convictions of Kenneth and the other witnesses were relevant to their credibility.

The rule governing conduct of the prosecutor during argument was succinctly stated in *State v. Adams*, 76 Wn.2d 650, 660, 458 P.2d 558 (1969):

It is established that the constitutionally guaranteed fair trial requires a trial in which the attorney representing the state does not throw the prestige of his public office and the expression of his own opinion of guilt into the scales against the accused. Thus, any attempt to impress upon the jury the prosecuting attorney's personal belief in the defendant's guilt is unethical and prejudicial. . . . Argument of counsel must be confined to the evidence and to fair and reasonable deductions to be drawn therefrom.

. . . Counsel is given reasonable latitude to draw and express inferences and deductions from the evidence, including inferences as to the credibility of witnesses.

Whether particular language or remarks are prejudicial depends upon the evidence in the case and the context of the remarks. An often used test is whether the argument calls the jury's attention to matters they are not justified in considering. *State v. Adams, supra*; *State v. Buttry*, 199 Wash. 228, 90 P.2d 1026 (1939).

We cannot say that the portion of the prosecutor's argument referring to the demeanor of the defendant constituted prejudicial misconduct. We note that defense counsel, in his closing argument, explained that the smiling stemmed from understandable nervousness. It was within the jury's province to determine which inference regarding defendant's appearance and demeanor was most reasonable, and that province was not invaded by the prosecutor's remarks. In the case at bar the jury's evaluation of the witnesses was especially important, because the main task before them was to determine whether Kenneth's or Clarence's version of the events was correct. The challenged remarks were not an expression of the prosecutor's opinion as to the guilt of the defendant, but rather were a reference to matters which a jury could properly consider in evaluating his demeanor. *See State v. Jefferson*, 11 Wn. App. 566, 524 P.2d 248 (1974).

Perhaps the most serious remark was the reference to the fact that Kenneth had spent 5½ years in the state penitentiary. However, it is well established that a prose-

cuting attorney may draw reasonable inferences as to the credibility of witnesses. *State v. Adams, supra; State v. Jefferson, supra.* Moreover, it has specifically been held that reference to a defendant's criminal record may be made during closing argument if the purpose is to show an effect on credibility, and evidence of the criminal record is properly before the jury. *State v. Harrison,* 72 Wn.2d 737, 740, 435 P.2d 547 (1967); *State v. Fullen,* 7 Wn. App. 369, 499 P.2d 893 (1972).

On direct examination Kenneth had testified to two prior convictions and to the fact that he had served a total of 5½ years in prison for these crimes. This is therefore not a case where the remarks were based upon matters not in evidence. Also, the prosecutor's reference to the defendant's prison time was clearly set in the context of credibility, for he took great pains to note that he was discussing credibility in this part of his closing argument. Since the prosecutor did not use the criminal record for any other purpose, and did not imply that the prior convictions made it more likely that the defendant had committed the crime for which he was then on trial, his argument was not improper. *See State v. Fullen, supra.*

The fourth issue on appeal is whether the trial court improperly commented on the evidence while ruling on an objection to a question asked a witness. After entertaining the objection to the question, and defense counsel's explanation of its purpose, the court stated, "That's a collateral issue." During the exchange which followed the court said, "I think it is not proper, but we are going to let you do it. Go ahead." The court also stated, "The court will strike its remarks, I think it is going a little bit further than the court should, but we are going to let you do it." The court concluded by saying, "All right. Go ahead, and the jury may weigh it in whatever way they feel they should." Questioning along the original line then continued.

The purpose of article 4, section 16 of the Washington Constitution is to prevent the jury from being influ-

enced by the judge's opinion of the evidence presented. Thus, those actions or words which are deemed to be a comment are those which directly or impliedly convey the judge's personal opinion of the weight or sufficiency of evidence submitted. Whether particular words amount to a comment is to be determined by looking to the circumstances of the case. *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970); *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971); *modified on other grounds, Cerny v. Washington*, 408 U.S. 939, 33 L. Ed. 2d 761, 92 S. Ct. 2873 (1972); *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968). Defendant cites us to *State v. Lampshire, supra*, for the proposition that though the trial court is only ruling on the admissibility of evidence, he may be deemed to have made an improper comment thereon, and unless the State sustains the burden of showing that no prejudice resulted, reversal is required. However, subsequent to *Lampshire* the Supreme Court held: "A trial court, in passing upon objections to testimony, has the right to give its reasons therefor and the same will not be treated as a comment on the evidence." *State v. Cerny, supra* at 855-56. *See State v. Lane*, 4 Wn. App. 745, 484 P.2d 432 (1971). Any possible conflict between *Lampshire* and *Cerny* does not concern us here, for even if it is possible for a trial judge to comment on the evidence when ruling on its admissibility, that did not occur here. The judge's remarks were directed solely to counsel, not to a witness or the jury, and it was clear that he was ruling on the admissibility of the evidence and giving his reasons for that ruling. He phrased his remarks in legal terms, and not in terms of the believability or credibility of the witness or her testimony. In fact, he concluded by striking his remarks and ruling in favor of the defense, saying "Go ahead" and "the jury may weigh it in whatever way they feel they should." This final statement and the giving of an instruction telling the jury to disregard anything which could be considered a comment on the evidence by the judge made it clear to the jury that it was

the sole judge of the credibility of the witness. Additionally, we would point out that contrary to defendant's contention, the alleged comment in *Lampshire* went far beyond a mere ruling on the evidence. The statement, " 'We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel,' " was an expression of the trial court's personal opinion of the weight and sufficiency of a whole line of testimony. In the instant case, it was clear that the trial judge was ruling on the admissibility of particular testimony and not expressing a personal opinion as to the credibility of the witness. No comment on the evidence was made.

Defendant's final contention is that he was denied a fair trial because of a headline appearing in a local paper which stated "Brother-Stabbing Trial Under Way." There had been no request that the jury be sequestered during trial, and the jury was sent home the evening that the article appeared, which was the day before the verdict was rendered. No challenge is made to the article itself, and in fact, defense counsel admitted that it was not objectionable.

As defendant correctly states, it is no longer necessary to affirmatively show that actual prejudice resulted if it is demonstrated that there was the probability of prejudice. *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971).

But clearly, the circus-style atmosphere prevalent in *Sheppard* did not exist here. Nor was there the probability of prejudice which existed in *Stiltner*, where several articles published prior to trial had narrowed in on the defendant in particular. At issue in the case at bar is a single headline. The headline states no conclusion as to the guilt of the defendant, but rather, simply indicates that the trial is under way; that is, the determination of guilt is yet to be made. The description of the type of trial is completely accurate—Kenneth was being tried for the stabbing of his brother. In *State v. Smith*, 11 Wn. App. 216, 521 P.2d 1197

(1974), the court was faced with a similar factual situation. There, prior to trial, three local newspaper articles referred to a suspect in the case as "Bobby 'Scarface' Smith." The defendant contended that as a result the jury would associate him with the crime when they saw the scar on his face. The court held that prejudice could not be presumed from such facts and since no actual prejudice had been shown, the denial of a change of venue was proper.

We cannot say that the headline in the instant case bore any probability of prejudice which would require reversal, and there is a total absence of any showing of actual prejudice.

The judgment is affirmed.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied September 17, 1975.

Review denied by Supreme Court November 24, 1975.