THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN DYKES, Defendant-Appellant.

First District (2nd Division)    No. 76-697

Opinion filed October 31, 1978.

James D. Montgomery, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Richard J. Barr, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, John Dykes, was found guilty in a jury trial of rape, aggravated incest and indecent liberties with a child and was sentenced to a term of from 10 to 18 years in the Illinois State Penitentiary. Defendant appeals.

The issues presented for review are: (1) whether defendant's conviction should be reversed because the prosecutor allegedly committed the following errors during closing argument: the prosecutor argued matters not in evidence; the prosecutor commented on defendant's failure to testify; the prosecutor vouched for the credibility of witnesses; (2) whether the rebuttal testimony offered for impeachment was improper and bore directly on the question of defendant's guilt or innocence; and (3) whether the trial court erred in refusing to strike the testimony of the complaining witness regarding prior acts of intercourse.

We affirm.

The following facts were adduced at trial:

On December 24, 1973, 11-year-old Yvonne Dykes lived with defendant (her father), her mother and her younger brother in an apartment on the second floor of a six unit building.

Yvonne Dykes testified that at approximately 12:45 p.m. on December 24, 1973, her father ordered her to go downstairs and clean the apartment of Billie Sue Lewis, a neighbor and friend of the family. Yvonne proceeded to Billie Sue's apartment and commenced cleaning the kitchen. Approximately 30 minutes later defendant entered Billie Sue's apartment and ordered Yvonne to come into the living room. Yvonne entered the room and defendant ordered her to remove her pants and lie on the couch. Defendant removed his pants and had intercourse with Yvonne. Defendant then instructed her not to tell anyone about the incident.

John Dykes, Jr., Yvonne's brother, testified that on December 24, 1973, defendant left the Dykes' apartment at 9:45 a.m. and did not return

until 2:30 p.m. that afternoon. John, Jr., stated that he was with Yvonne at all times on December 24, and they both remained in their apartment until 1:30 p.m. Then they proceeded downstairs to Billie Sue's apartment and remained there until 3 p.m. At that time they went upstairs to get money from defendant to go shopping. When they returned from the store, defendant spanked Yvonne and then hit her in the face because "she lost some money" and did not buy "chitterlings" at the grocery store. John stated that he, Yvonne and Billie Sue then went back to the store where they met Mrs. Dykes.

Billie Sue Lewis testified that on December 24, 1973, she returned home from work at 11:45 a.m. She remembered locking the doors when she left for work and stated that to her knowledge no one other than herself had keys to her apartment. She remained alone in her apartment until John, Jr., and Yvonne came downstairs at 2:30 p.m. that afternoon. The three of them went upstairs to the Dykes' apartment, got money from defendant and then went shopping. Billie Sue stated that after returning home, defendant spanked Yvonne "once on the fanny" for spending too much money, but she never saw defendant hit Yvonne in the face.

Mrs. Dykes, the wife of defendant, testified that on December 24, 1973, Yvonne told her that defendant spanked Yvonne but did not tell her that defendant had intercourse with her. Yvonne testified that on December 25, 1973, she told her mother that defendant "had been messing with me," and Mrs. Dykes promised "to take care of it."

Mrs. Dykes stated that on December 27, while at work, she received a phone call from Yvonne pleading with her to come home and take Yvonne to her grandmother's house. Mrs. Dykes took Yvonne to the "L" station intending to proceed to her mother's home. Mrs. Dykes stated that they got off the train at the Lawrence Avenue station and went into an adjoining restaurant to phone Mrs. Dykes' mother. While in the restaurant, Yvonne told her mother that "I thought my daddy was in my bedroom last night," and Mrs. Dykes called police. Officer Podborny testified that he proceeded to the Berwyn "L" station where Yvonne and Mrs. Dykes told him that defendant had raped Yvonne on December 24, 1973. Officer Podborny took Yvonne and Mrs. Dykes to the police station to be interviewed and then to Ravenswood Hospital where Yvonne was examined by Dr. Ghan.

Dr. Ghan testified that she examined Yvonne in the emergency room at Ravenswood Hospital on December 27, 1973. During the examination Yvonne told Dr. Ghan that she had been raped by her father two or three days earlier. The doctor testified that Yvonne did not have any tenderness or physical injuries, but that she did have an "old ruptured hymen." When asked if a ruptured hymen could be caused by a fall, Dr. Ghan stated that

the hymen becomes ruptured primarily through sexual intercourse, and that it would be unusual for a girl of Yvonne's age to have a ruptured hymen caused by a fall. Dr. Ghan testified she did not look for any sperm because the rape occurred two to three days prior to the examination, and the sperm would only remain for 24 to 48 hours. The doctor also stated that it was impossible to determine the age of a ruptured hymen.

Mrs. Dykes testified that Yvonne told Dr. Ghan only "that she thought her father was in her bedroom" that night. Mrs. Dykes also stated that Dr. Ghan told her that "she didn't find nothing."

Yvonne also testified that defendant had sexual intercourse with her prior to December 24, 1973, the first time when she was eight or nine years old. She was able to recall only one other incident of intercourse with defendant, which allegedly occurred during the first week of November 1973. Yvonne stated that after each act of intercourse with defendant he would threaten to whip her if she told anyone, but that after each incident she told her mother that defendant "was messing with me." After she told her mother of these incidents, her mother would leave defendant, taking Yvonne and John, Jr., to the house of Mrs. Dykes' mother.

Mrs. Dykes further testified that in October 1973 Yvonne also complained that she thought defendant had been in her bedroom. At that time Mrs. Dykes summoned the police, and Yvonne told the investigating officer that she thought defendant was in her bedroom the previous night. Mrs. Dykes stated that the police officer advised that Yvonne needed psychiatric treatment. Defendant was not arrested or charged with any offense occurring during October 1973.[1]

I

Defendant first contends that he was denied his constitutional right to a fair trial because the prosecutor made allegedly prejudicial comments during closing arguments. Defendant maintains that the prosecutor offered statements of alleged facts not in evidence, commented on defendant's failure to testify and vouched for the credibility of witnesses.

■■ A prosecutor is allowed wide latitude in making the closing argument (see *People v. Franklin* (1st Dist. 1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634), and generally the trial court's determination of the propriety of the closing argument will not be disturbed absent a clear abuse of discretion. (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.) Courts have held that it is impractical to establish specific guidelines for proper argument to the jury (*People v. Gilmore* (1st Dist. 1969), 118 Ill. App. 2d 100, 254 N.E.2d 590, *cert. denied* (1970), 400 U.S. 845, 27 L.

---

[1] The court notes that because of the conflicting evidence and the widespread disparity in testimony, it is difficult to summarize a sequential statement of pertinent facts.

Ed. 2d 81, 91 S. Ct. 89), and each case must thus be decided on its own facts. *People v. Bigsby* (1st Dist. 1977), 52 Ill. App. 3d 277, 367 N.E.2d 358.

■■ In his closing argument defense counsel remarked that the prosecutor failed to bring in to testify a certain police officer who had spoken with Mrs. Dykes. The prosecutor in his closing argument stated: "How often— do we have to bring police officers in here to impeach that witness?" Defendant alleges that the prosecutor's statement referred to matters not in evidence and resulted in denying defendant a fair trial. As a general rule assumptions and statements not based on evidence may not be argued to the jury. (*People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.) However, in this instance the prosecutor's comments were in direct response to defense counsel's arguments to the contrary. The record shows that defense counsel invited the retaliatory comments and explanations of the prosecutor now cited as error, and that the latter were within the bounds of fair comment. *People v. McElroy* (1964), 30 Ill. 2d 286, 292, 196 N.E.2d 651.

In *City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 248 N.E.2d 71, the prosecutor in closing argument remarked that another police officer was not produced as a witness because his testimony would merely be a reiteration of other prosecution evidence. The Illinois Supreme Court rejected the defense argument that the prosecutor's statement was improper because it injected matters not in evidence, stating it was "perfectly proper as a response to defense counsel's queries in his argument as to why the officer was not produced at the trial."

Defendant cites other instances where the prosecutor alluded to facts not in evidence, but we find these alleged misstatements are mere comments and legitimate inferences drawn from the evidence. (See *People v. Fleming* (1st Dist. 1975), 36 Ill. App. 3d 612, 621, 345 N.E.2d 10.) Moreover, nonmaterial unintentional misstatements of facts do not constitute prejudicial error. (*People v. Kitchen* (1st Dist. 1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.) Alleged misstatements by the prosecutor such as defendant "hit her like you hit a man" were not a material factor in defendant's conviction, do not affect the merits or justice of the decision and do not require a reversal. *People v. Jenko* (1951), 410 Ill. 478, 485, 102 N.E.2d 783.

Defendant next contends that remarks made by the prosecutor in closing argument amounted to a comment on defendant's failure to testify in his own defense, violating defendant's right not to incriminate himself. It is well settled that a defendant's choice not to testify is an improper subject for comment by the State and may be grounds for reversal if prejudicial. Ill. Rev. Stat. 1975, ch. 38, par. 155—1; *People v.*

*Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490.

The prosecutor made the following remarks which defendant complains directed the attention of the jury to defendant's failure to testify:

> "Does it make sense that Yvonne Dykes is going to make false allegations against her father for one spanking or one slap on the fanny or one punch in the face? * * * Yvonne Dykes got up on the stand, and she told you what happened. She recounted it clearly. You heard some references to the fact that she testified at other hearings. Is Yvonne Dykes going to falsely accuse her father based upon that? *Is that reasonable? Make the defense tell you how that's reasonable.*
>
> Mr. Edwards: Objection, your Honor. The defense doesn't have to tell anybody what is reasonable or not; the evidence speaks for itself.
>
> The Court: All right, I will sustain that.
>
> Mr. Edwards: I ask to have the jury disregard the comment.
>
> The Court: The jury will disregard that comment." (Emphasis added.)

■■ ■ The test in determining whether the prosecutor's remarks during closing argument violated defendant's right to remain silent is whether the reference was intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. (*People v. Mills* (1968), 40 Ill. 2d 4, 8, 237 N.E.2d 697.) The remark, "make the defense tell you how that is reasonable," does not appear to be calculated or intended to direct the jury's attention to defendant's failure to testify. When viewed in the context of the record, the comment is only a reference to the credibility of Yvonne Dykes versus the testimony of the defense witnesses. Comments which are directed to the credibility of witnesses are within the bounds of proper argument. (*People v. Franklin* (1st Dist. 1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) While the comment might have been better left unsaid, we are of the opinion that in view of the prompt objection, the court's prompt ruling and instructing the jury to disregard the comment, any impropriety resulted in no substantial prejudice to defendant. *People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E. 230.

Defendant alleges other errors in the prosecutor's argument which constitute comments on defendant's demeanor and drew the jury's attention to defendant's failure to testify. The prosecutor made two references in closing argument about defendant's laughing. First, during opening summation the prosecutor remarked that defendant sat there

laughing during Yvonne Dykes' testimony. Also, during rebuttal argument the prosecutor stated:

> "Let him know by your verdict, ladies and gentlemen, that you don't consider this funny, you don't consider it a laughing matter."

Defendant relies primarily on the decision in *United States v. Wright* (D. C. Cir. 1973), 489 F.2d 1181, to support his contention that the prosecutor's comments were improper. In *Wright* the prosecutor stated the defendant "has found a good part of it humorous, other parts he couldn't stand. And you may definitely consider his demeanor in your deliberations." The court's reversal of defendant's conviction was based on the latter comment. Defendant's reliance on *Wright* is misplaced. In the case at bar the prosecutor made no comment that the jury could consider defendant's demeanor in its deliberations.

■■ The prosecutor's conduct here is similar to the remarks made by the prosecutor in *People v. Dixon* (1st Dist. 1974), 20 Ill. App. 3d 753, 754, 314 N.E.2d 695, that "the defendant sits throughout this whole trial, * * * without a nickel's bit of emotion, without anything." The court found this remark did not constitute a comment on defendant's failure to testify. In the case at bar the comments alluding to defendant's laughter were not intended or calculated to direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify. *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.

Defendant contends that the State improperly vouched for the credibility of its witnesses. During closing argument the prosecutor stated:

> "I would like to talk about the quality of the case presented by the defense first. You heard the defense witnesses. You heard the spokesman for the defense; when I say spokesman, I am referring to the fact that a party who puts someone on the stand as a witness vouches for their credibility. And you heard what they testified to.
>
> Mr. Edwards: I object to counsel's reference of spokesman.
>
> Mr. Cutrone: You—
>
> The Court: Overruled.
>
> Mr. Cutrone: —heard how they contradicted each other. They couldn't get their story straight. You heard as many different versions of the events as there were defense witnesses to testify."

Defendant cites *People v. Bolton* (3d Dist. 1976), 35 Ill. App. 3d 965, 343 N.E.2d 190, and *People v. Adkins* (1st Dist. 1973), 16 Ill. App. 3d 394, 306 N.E.2d 709, to support his contention that the prosecutor vouched for the credibility of the State's witnesses. The prosecutors in *Bolton* and *Adkins* used the official capacity of the prosecutor's office to vouch for the credibility of their cases. In the case at bar the prosecutor's comments were directed to the credibility of the defense witnesses, and it appears

the prosecutor was not vouching for the credibility of the State's witnesses. A prosecuting attorney may properly vouch for the credibility and truthfulness of witnesses if it constitutes merely comment on credibility and is not prejudicial to the accused. *People v. Oden* (1st Dist. 1975), 26 Ill. App. 3d 613, 325 N.E.2d 446.

■■ The defense did not object to the statement that "a party who puts someone on the stand vouches for their credibility." The record clearly indicates that defense counsel merely objected to being referred to as a "spokesman." In order to preserve an issue for review, a proper objection must be timely made specifically indicating what remarks are deemed improper. (See *People v. Killebrew* (1973), 55 Ill. 2d 337, 341, 303 N.E.2d 377; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) Therefore any issue relative to the prosecutor's statement that a party vouches for the credibility of his witnesses is waived by failure to object to the statement. *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227.

The record does not reflect that any of the remarks made by the prosecutor either improperly influenced the jury or resulted in substantial prejudice to defendant (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1955), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881), that the remarks were a material factor in defendant's conviction (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363), or that the verdict would have been different had the comment not been made. *People v. Trice* (1st Dist. 1970), 127 Ill. App. 2d 310, 262 N.E.2d 276.

## II

■ Defendant contends the court committed error by admitting impeachment testimony which bore directly upon defendant's guilt. The impeachment evidence consisted of the testimony of two police officers regarding statements made to them by Mrs. Dykes that her daughter was raped by defendant. In the cases cited by defendant to support this contention the prosecutor offered statements of a defense witness for impeachment which contained a confession or admissions by the defendant. Both courts found these statements were submitted under the guise of impeachment for the sole purpose of eliciting substantive evidence of a previous confession or admission by defendant. In the case at bar the prior inconsistent statements of Mrs. Dykes did not contain admissions by defendant but were only statements made by the victim to her mother and were offered solely for impeachment purposes. Thus it was not error to allow the testimony. *People v. Marino* (1970), 44 Ill. 2d 562, 577-78, 256 N.E.2d 770.

Furthermore, we note that the substance of the impeachment testimony had previously been revealed to the jury during the State's case in chief. Yvonne Dykes testified that she told a police officer on December

that she had been raped by her father. Officer Podborny testified that Yvonne and Mrs. Dykes told him that defendant raped Yvonne on December 24. Dr. Chan testified that during the examination of Yvonne on December 27 Yvonne told her that defendant had raped her two to three days earlier. Also, it is clear that prior statements of a complaining witness in a rape or indecent liberties prosecution are not hearsay and are admissible to corroborate the complaint of the victim. *People v. Williams* (1st Dist. 1973), 16 Ill. App. 3d 121, 124, 305 N.E.2d 718.

### III

Defendant's final contention is that the trial court erred in refusing to strike the testimony of Yvonne regarding prior acts of intercourse with defendant because the State knowingly failed to disclose its intention to use such evidence at trial. During August 1974, approximately one year prior to trial, the defense filed a motion for discovery which contained the following request:

> "(K) A statement informing the defendant whether:
>
> (5) The State will attempt to prove any prior acts or convictions similar to the offense charged in this cause for the purpose of proving knowledge, intent or motive; and if so, a listing of the dates and places of each prior act or conviction that the State will attempt to prove."

The State answered this request by listing the names of its witnesses and noting the time and place of intercourse occurring on December 24, 1973, as alleged in the indictment. Defendant contends that he was severely prejudiced by the State's failure to comply with discovery, and the trial court should have granted his motion to strike Yvonne's testimony as to prior acts of intercourse with defendant. We do not agree with defendant's contentions. The State complied with defendant's motion for discovery to the extent required by Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412) by listing all witnesses and the time, place and date of the acts the State alleged in the indictment. If defendant believed that testimony about these prior acts was material to the preparation of the defense, and that the State failed to comply with requested discovery, he could have made a request to the trial court under Supreme Court Rule 412(h) which provides:

> "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by this rule." Ill. Rev. Stat. 1975, ch. 110A, par. 412(h).

■■■ Without a specific request in the trial court for discovery as to prior acts, the defendant cannot now complain of prejudicial error on

appeal. (*People v. Partee* (1st Dist. 1974), 17 Ill. App. 3d 166, 177, 308 N.E.2d 18.) The record shows defendant knew of the State's intention to show prior acts of intercourse long before he presented his motion to strike Yvonne's testimony. The prosecutor mentioned in his opening statement that he intended to introduce this testimony. Defense counsel responded that he would deal with evidence of prior acts of intercourse when it arose. Furthermore, defense counsel did not object on these grounds during Yvonne's testimony, and he proceeded to conduct a vigorous cross-examination of her. Having failed to give the court an opportunity to rule at commencement of trial or during Yvonne's testimony, coupled with an untimely motion to strike after her testimony, defendant waived his right to object to the denial of his motion. (See *People v. Embry* (5th Dist. 1973), 12 Ill. App. 3d 332, 335, 297 N.E.2d 604.) It is within the sound discretion of the trial court to admit testimony, and the admission of such evidence does not constitute error absent a showing by accused of surprise and resulting prejudice. (*People v. Dees* (1st Dist. 1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126, 1132.) We are not persuaded that Yvonne Dykes' testimony resulted in surprise or prejudice to defendant. Thus we find the trial court did not abuse its discretion in refusing to strike her testimony.

For the foregoing reasons we find no reversible error.

Affirmed.

DOWNING and BROWN, JJ., concur.