The PEOPLE of the State of
Colorado, Petitioner,

v.

Gardy CONSTANT, Respondent.

No. 80SC250.

Supreme Court of Colorado,
En Banc.

March 29, 1982.
Rehearing Denied April 19, 1982.

J. D. MacFarlane, Atty. Gen., Richard F.
Hennessey, Deputy Atty. Gen., Mary J.
Mullarky, Sol. Gen., Robinson, Waters,
O'Dorisio & Rapson, P. C., William R. Rap-
son, Denver, for petitioner.

Karp, Goldstein & Stern, Kenneth H.
Stern, Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *People v. Constant*, Colo.App., 623 P.2d 63 (1980), which granted the defendant, Gardy Constant, a new trial because the prosecutor's closing argument called the jury's attention to the fact that the defendant was laughing while the complaining witness testified and during the prosecution's closing argument. We reverse the judgment of the court of appeals and remand to the court of appeals with directions to affirm the judgment of conviction.

The defendant was convicted by a jury of first-degree sexual assault,[1] second-degree burglary,[2] and crime of violence,[3] and was thereafter sentenced to the Colorado State Penitentiary. The sole issue before us is whether the prosecutor's comments in closing argument regarding the defendant's demeanor at trial constituted plain error which requires reversal and a new trial. No contemporaneous objection was made by defense counsel to the prosecution's argument and no error was asserted in the defendant's motion for a new trial. In our view, the court of appeals erred in reversing the defendant's conviction because the alleged prosecutorial misconduct was not plain error.

I.

*The Factual Background*

The factual dispute in this case centers on whether the complaining witness consented or was forced at knifepoint to submit to sexual intercourse with the defendant. At trial, the testimony of the complaining witness and the defendant was in sharp conflict, and their credibility was the primary issue for the jury to determine. A review of the testimony of both the complaining witness and the defendant provides the foundation for the legal conclusions in this opinion.

The complaining witness testified that she returned to her second floor apartment in Colorado Springs, Colorado, in the early morning hours of January 7, 1978. When she unlocked the front door, she saw the defendant standing in her kitchen with a knife in his hand. She testified that the defendant then forced her into the bedroom by putting his arm around her neck and the knife to her throat. She said that he then undressed her and forced her to submit to sexual intercourse. She also described how the defendant covered her face with a curtain while he was having intercourse with her. When she asked the defendant why he raped her, he laughed and said "You wouldn't believe me."

The defendant then permitted the complaining witness to dress, and he remained in the apartment for a short period of time. He apologized for raping her and said that he had done it to win a bet from some college friends which required him to "go into a lady's apartment, and take some of her jewelry, and come three times and then leave." At first the defendant prevented the complaining witness from telephoning the police, but he eventually permitted a call to be completed. He then left and was arrested outside the apartment. Thereafter the police found the defendant's car keys on a ledge outside a window of the apartment, and located some of the complaining witness' jewelry in the defendant's car. The police also recovered a knife and a curtain near the complaining witness' bed.

The defendant admitted being in the apartment and having sexual intercourse with the complaining witness but testified that no force was used. He said that he had been drinking heavily that night and decided that he would visit an old girl friend. When he arrived at what he believed to be her apartment, he found the door unlocked and entered. He thought that she had been negligent in leaving the door unlocked and, to teach her a lesson,

1. Section 18–3–402, C.R.S.1973 (1978 Repl. Vol. 8).

2. Section 18–4–203, C.R.S.1973 (now in 1978 Repl. Vol. 8).

3. Section 16–11–309, C.R.S.1973 (1978 Repl. Vol. 8).

took her jewelry and some other items and put them in his car. He then returned to the apartment, fixed a snack in the kitchen, and waited for her to return. According to the defendant, he was washing a knife when the complaining witness came home. He was embarrassed when he did not recognize her and realized that he was in the wrong apartment. He then decided that he should "get on good terms" with her because of his mistake in taking her jewelry, and suggested that they "go to bed" since she seemed "pretty friendly." The defendant testified that the complaining witness responded by saying "as handsome as you are, you don't need that knife," and led him to the bedroom.

He testified that he covered her face with a curtain while having intercourse "because he didn't like the way she looked." Afterwards, the defendant admitted that while he was "reminiscing about the evening," he "giggled a little." In his view, the complaining witness thought that he was laughing at her, became angry, and called the police. He said he waited for the police to arrive because he did not rape her, but only consented to have intercourse.

## II.

### The Closing Argument

It is not disputed that the defendant laughed while the complaining witness testified and also laughed during the prosecution's closing argument. In closing argument, the prosecutor pointed out the inconsistencies in testimony and the defendant's incredible theory of consent. In attacking the defendant's credibility, the prosecutor characterized his testimony as a deliberate fabrication designed to mislead the jury which was motivated by his desire to evade responsibility for a criminal act. The court of appeals concluded that the following statements in the prosecution's closing argument required reversal of the defendant's conviction:

> "And *Mr. Constant is laughing again like he did before.* This whole trial is a joke to him." (Emphasis added.)
>
> \* \* \* \* \* \*

> "And [defense counsel] makes the statement that in this trial Mr. Constant has been painfully honest with you. You have been able to observe his demeanor, and *while [the complaining witness] was testifying he was generally chuckling to himself.*" (Emphasis added.)
>
> \* \* \* \* \* \*

> "Let's look at [the complaining witness'] motives in testifying. It's one of the things in credibility you can look at. If she was just mad at him, because he said she was ugly, would she tell it to two police officers at length, would she go through a vaginal examination ... and testify before all you people, and all those people, and these people, and *watch him laugh at her while she was testifying,* and go to counseling at Victim Services Bureau?" (Emphasis added.)
>
> \* \* \* \* \* \*

> "Their demeanor on the witness stand in the courtroom—[the complaining witness] did pretty well in telling you what happened to her. It was a very personal thing that happened to her. She used a few Kleenexes and she was tearing them up with her hands. I think she only had a couple of tears. *What did Gardy Constant do? He laughed. [The complaining witness] testified that he just kept sitting there—he just kept laughing at her, just like after he rolled off her and she said, 'Why?' and he just laughed.*" (Emphasis added.)

Defense counsel made no objection to any of the prosecutor's remarks, and none of the references to the defendant's laughter were asserted as grounds for reversal in the defendant's motion for a new trial. The error was asserted for the first time on appeal.

 In closing argument, the prosecutor also stressed the need for the jury to determine the credibility of the complaining witness and the defendant, and reviewed the court's instruction to the jury on the credibility of witnesses. *Colo.J.I.* (Crim.) 3:8 (1974 rev.). Counsel can with propriety comment on how well and in what manner

a witness measures up to the tests of credibility set forth in the instruction. *Valdez v. People,* 168 Colo. 429, 451 P.2d 750 (1969). Moreover, to determine whether the prosecutor's closing argument is improper, the remarks complained of must be reviewed in light of the evidence which is before the jury. *Stout v. People,* 171 Colo. 142, 464 P.2d 872 (1970). *See also State v. Knapp,* 14 Wash.App. 101, 540 P.2d 898 (1975). A determination of whether the prosecutor's closing argument is improper depends upon the nature of the comment and on whether the jury's attention has been directed to something which it is not entitled to consider. *State v. Knapp, supra. See also State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980).

Here, the prosecutor commented on the defendant's behavior at the defense table. He referred to the fact that the defendant laughed during the time that the complaining witness testified and during the prosecution's rebuttal argument. The prosecution's reference to the defendant's conduct at the defense table were brief. Moreover, the defendant's conduct was committed in the presence of the jury. In *People v. Dykes,* 66 Ill.App.3d 403, 23 Ill.Dec. 183, 383 N.E.2d 1210 (1978), *cert. denied,* 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 305 (1979), a conviction for rape and other sexual misconduct was affirmed when the defendant did not testify in his own defense and laughed at the rape victim while she was testifying. In the course of his closing argument, the prosecution in *Dykes* told the jury that they should let the defendant know by their verdict that "you don't consider this funny, you don't consider it a laughing matter." In reviewing the conduct, the Illinois court concluded that the prosecutor had not argued that the defendant's demeanor was evidence of guilt, but merely had pointed out the defendant's conduct to the jury. *Cf. United States v. Wright,* 489 F.2d 1181 (D.C.Cir.1973).

■ We agree that a prosecutor may draw reasonable inferences as to the demeanor and credibility of witnesses. Based upon the facts of this case, the prosecution's argument is consistent with the instruction to the jury which permits the jury to consider the demeanor of witnesses for credibility purposes.[4] Therefore, even though "demeanor" is not technically evidence, the jury is not only permitted but also affirmatively instructed to consider it in assessing witness credibility.

■ Persuasive to our decision is the fact that the defendant elected to take the witness stand and testify in his own defense. His demeanor and credibility were therefore proper subjects for the jury to consider. In addition, we note that the prosecutor argued that the defendant's demeanor was evidence of his credibility and not that his demeanor was itself evidence of guilt. Since the defendant's demeanor was proper for the jury to consider, the determinative issue is whether the prosecutor's references to the defendant's demeanor in laughing at the defense table as well as on the witness stand is plain error.

## III.

### *Plain Error*

The court of appeals concluded that the prosecution's argument, which pointed out that the defendant was laughing while the complaining witness testified and during the closing argument, was so egregious as to constitute plain error when the "impact of the misconduct upon the result is empha-

---

**4.** 4 *Colo.J.I.* (Crim.) 3:8 (1974 rev.) provides:

You are the sole judge of the credibility of witnesses including the defendant and of the weight to be given to the testimony of them. You should take into consideration the witnesses' means of knowledge; strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or inconsistency of their testimony; the motives actuating them; the fact, if it is a fact, that their testimony has been contradicted; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affects the credibility of their testimony. If you believe that any witnesses have willfully testified falsely to any material fact in this case, you may disregard all or any part of their testimony.

sized." The analysis of the court of appeals is not correct.

■ Prosecutorial misconduct provides a basis for reversal because of plain error only where there is a substantial likelihood that it affected the verdict or deprived a defendant of a fair and impartial trial. In making such a determination, a number of factors must be considered. *See Donnelly v. DeCristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Of significance to us is the fact that defense counsel did not make a contemporaneous objection to the prosecutor's comments and failed to assert in a motion for new trial that the closing argument of the prosecutor was improper.

In *People v. Ferrell*, Colo., 613 P.2d 324 (1980), we held "where the alleged error consists of prosecutorial misconduct during closing argument and a proper mistrial objection is made and preserved at the trial court level, a new trial is in order only if the trial court abused its discretion." *See also People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978).

■ When the alleged error consists of prosecutorial misconduct and was not preserved by a contemporaneous objection, it will not be considered on appeal unless it was plain error affecting the substantial rights of the defendant. *See Vigil v. People*, 196 Colo. 522, 587 P.2d 1196 (1978). *See also People v. Talbot*, 64 Cal.2d 691, 414 P.2d 633, 51 Cal.Rptr. 417 (1966), *cert. denied* 385 U.S. 1015, 87 S.Ct. 729, 17 L.Ed.2d 551 (1967). In this case, the alleged error was raised for the first time on appeal. Unless a prosecutor's misconduct is flagrant or "glaringly or tremendously" improper, it is not plain error under Crim.P. 52(b) where no objection to the behavior was raised. *People v. Simbolo*, 188 Colo. 49, 532 P.2d 962 (1975). *See also* Alschuler, *Courtroom Misconduct by Prosecutors and Trial Judges*, 50 Tex.L.Rev. 629 (1972).

■ In *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978), we said:

"The ... improprieties noted above were not objected to at trial, and we have held ' on numerous occasions that prosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error, within the meaning of Crim.P. 52(b), so that we may consider it on appeal absent a contemporaneous objection. *See, e.g., People v. Plotner*, 188 Colo. 297, 534 P.2d 791 (1975); *People v. Simbolo*, 188 Colo. 49, 532 P.2d 962 (1975). We find no misconduct so flagrant as to constitute plain error." *Id.* at 25, 581 P.2d 723.

Similarly, under the circumstances of this case, we do not consider the prosecutor's comments during closing argument to be so egregious as to constitute plain error.

We have considered the defendant's other allegations of error and find them to be without merit.

Accordingly, we reverse the decision of the court of appeals and remand this case to the court of appeals with directions to affirm the judgment of conviction against the defendant, Gardy Constant.

LOHR, J., specially concurs.

LOHR, Justice, specially concurring:

I agree that under the circumstances presented here no plain error occurred when the prosecution made reference to the defendant's demeanor at the defense table. Because of that conclusion, it is unnecessary to extend the discussion further than to demonstrate the absence of plain error and I would not do so. I concur with part III of the majority opinion and join in the result.